**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| CELESTE R. MECK, Individually and as the Executrix of the Estate of the Deceased John W. Meck, | CASE NO: 1:15CV2132 |
| | JUDGE CHRISTOPHER BOYKO |
| Plaintiff, | MAGISTRATE JUDGE JONATHAN D. GREENBERG |
| v. | |
| CLEVELAND CLINIC FOUNDATION, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

This matter has been referred to the undersigned to resolve the discovery dispute set forth in Plaintiff Celeste R. Meck's Motion to Compel (Doc. No. 25) and Defendant Cleveland Clinic Foundation's Motion for a Protective Order (Doc. No. 28). For the following reasons, Plaintiff's Motion to Compel is DENIED and Defendant's Motion for Protective Order is GRANTED (Doc. Nos. 25, 28.)

**I.    Background**

On October 14, 2015, Plaintiff Celeste R. Meck, individually and as the Executrix of the Estate of the Deceased John W. Meck, filed a Complaint in this Court against Defendant Cleveland Clinic Foundation ("CCF"). (Doc. No. 1.) In the Complaint, Plaintiff alleges the following.

On or about February 7, 2013, John W. Meck (the husband of Plaintiff Celeste R. Meck) underwent surgery at CCF for repair of a thoracoabdominal aortic aneurysm. (Doc. No. 1 at ¶

10.) This surgery is referred to as a Fenestrated Endovascular Aortic Aneurysm Repair ("FEVAR") and was performed by Cleveland Clinic vascular surgeon Dr. Matthew Eagleton. (*Id*.) During the surgery, CCF personnel inserted a subarachnoid drain ("SA drain") into the lower part of Mr. Meck's back, near the spinal cord, as a means of maintaining adequate spinal cord pressure during and following the procedure. (*Id*. at ¶ 24.) The SA drain was in place when Mr. Meck was taken to the cardiovascular intensive care unit after the surgery, and remained in place until it was removed several days later. (*Id*. at ¶ 25.) The SA drain was connected to apparatus to monitor spinal cord pressure and "was not intended as a route for the delivery of any medications." (*Id*. at ¶ 26.) Plaintiff claims "delivery of medication into the subarachnoid drain could cause devastating neurologic consequences including paralysis and others." (*Id*. at ¶ 28.)

Plaintiff asserts a CCF nurse gave Mr. Meck at least one medication through a sampling portion of the SA drain at the time it was still inserted into Mr. Meck's back. (*Id*. at ¶ 30.) Plaintiff claims the nurse did not have a valid order to do so and, further, that delivery of medication into the SA drain was negligent. (*Id*. at ¶¶ 31, 32.)

Several hours after the surgery, Mr. Meck "suddenly lost all feeling and movement at and below the level of his umbilicus." (*Id*. at ¶ 20.) According to Plaintiff, the "wrongful delivery of the subject medication (or medications) by the Defendant Cleveland Clinic nurse supposedly was discovered by a Defendant Cleveland Clinic physician some time later, after Decedent Mr. Meck already was paralyzed." (*Id.* at ¶ 33.) Plaintiff asserts the wrongful delivery of medication through the SA drain prevented treatment of any neurologic consequences of the FEVAR procedure and was the direct and proximate cause of Mr. Meck's injuries. (*Id.* at ¶¶ 34, 35.)

Plaintiff claims CCF failed to inform Mr. Meck or any of his family members about the wrongful delivery of medication through the SA drain. (*Id*. at ¶ 36.) She also asserts CCF "failed to reasonably, properly and honestly document occurrences during the critical portions of Decedent Mr. Meck's admission to the cardiovascular intensive care unit, as there are gaps in the charting, inconsistencies in the charting, and other indicia of improper documentation indicative of substandard care." (*Id*. at ¶ 39.)

Mr. Meck became permanently paralyzed while a patient at CCF. (*Id*. at ¶ 21.) Plaintiff claims her husband's health deteriorated after the surgery, and he died from complications relating to his paralysis on October 17, 2014. (*Id*. at ¶ 40.)

Defendant CCF filed an Answer on November 5, 2015 (Doc. No. 4) and the parties proceeded to conduct discovery. On April 13, 2017, Plaintiff filed a Motion to Compel, seeking an Order requiring Defendant to produce certain photographs and two Safety Event Reporting System ("SERS") reports relating to the allegedly improper delivery of medication through Mr. Meck's SA drain. (Doc. No. 25.) Defendant CCF filed a Brief in Opposition and Motion for Protective Order on April 27, 2017, to which Plaintiff replied on May 1, 2017. (Doc. No. 28, 30.)

The parties' discovery dispute was referred to the undersigned on April 28, 2017. (Doc. No. 29.) On May 3, 2017, this Court ordered Defendant to deliver two sets of unredacted copies of the SERS reports at issue to Chambers for *in camera* review.[1] (Doc. No. 32.) Defendant timely complied with the Court's Order and delivered the SERS reports for *in camera* inspection

---

[1] The Court did not order Defendant to submit the photographs for *in camera* review since (as discussed *infra*) Plaintiff subsequently withdrew her request for production of the photographs at issue.

3

on May 8, 2017. (Doc. No. 34.) The undersigned has reviewed the two SERS reports produced by CCF for *in camera* review, and this matter is now ripe for adjudication.

**II.    Discussion**

In March 2016, Plaintiff propounded document requests to Defendant CCF seeking (among other things) the following: (1) complete copies of any incident reports filed with reference to Mr. Meck; and (2) a listing of every meeting or review during which the care rendered to Mr. Meck was discussed. (Doc. No. 25-1 at Requests for Production Nos. 3, 4.) Defendant CCF objected to the requests, as follows:

> 3.    Produce complete copies of any incident reports filed with reference to Mr. Meck. If you claim a privilege, please see instructions.
>
> **Response:**
>
> OBJECTION: The information sought by this Request is privileged and protected by the attorney client and work product privileges and by the Peer Review and Quality Assurance privileges granted by O.R.C. 2305.25, 2305.252, 2305.24 and 2305.253. Responsive documents were produced in Response to Request No. 7. **Only documents withheld pursuant to this Objection is a Safety Event Reporting System (SERS) report dated 2/8/13 and 3/12/13**, and the Clinic Ombudsman records dated 2/8/13 through 2/21/13.
>
> 4.    Produce a listing of every meeting or review during which the care rendered to Mr. Meck was discussed (Please note that the fact that a meeting took place is not protected by the Peer Review Protection Act).
>
> * * *
>
> **Response:**
>
> There was a meeting with Nurse Mavar and his supervisors regarding this incident and the only records from that meeting are contained in Nurse Mavar's personnel file provided in Response to Request No. 7.
>
> OBJECTION: Seeks privileged information pursuant to O.R.C. 2305.252. Cleveland Clinic Hospital has an internal quality assurance/peer review

4

> committee process that conducts quality review activities involving the competence of, professional conduct of, and quality of care provided by health care providers. An investigation into, or review of, the care provided to Mr. Meck was conducted by the peer review/ quality assurance committee; documents withheld pursuant to the Objection are the attendee sign-in sheet, the Corrective Action Plan, a Timeline, a Chronology & Analysis of Medical Care, reports, interview summaries and **photographs prepared by the Clinic Risk Manager for the Quality & Patient Safety Institute prepared for this meeting**. There was also a Vascular Surgery Morbidity and Mortality Conference at which this incident was discussed; the only record for this meeting being withheld pursuant to this Objection is the Agenda.

(Doc. No. 25-2) (emphasis added).

In her Motion to Compel, Plaintiff asserts Defendant improperly failed to produce the photographs and two SERS reports identified in response to the above requests. (Doc. No. 25.) She maintains Defendant has failed to carry its burden of demonstrating these documents are protected from disclosure under either the attorney work product and/or Ohio peer review privileges. (*Id.*) Specifically, with respect to the SERS reports, Plaintiff argues the peer review privilege is only applicable where the document in question is created solely for use by a peer review committee. She asserts assertion of both the work product and peer review privilege is mutually inconsistent, arguing "the fact that Defendant CCF is asserting the alternative privilege [of attorney work product] in and of itself demonstrates that the Ohio specific peer review privilege is inapplicable." (*Id.* at 9.) With respect to the photographs, Plaintiff argues CCF is "trying to prevent legitimate disclosure of relevant photographs under a blanket reference to the peer review privilege." (*Id*. at 8.)

In response, Defendant argues the photographs and SERS reports are protected from

disclosure under Ohio's peer review privilege.[2] (Doc. No. 28.) In support of this argument, Defendant submits a Privilege Log and the Affidavit of counsel for CCF, Sandy DiFranco. (Doc. Nos. 28-1, 28-2.) The Privilege Log identifies three photographs "depicting a mock - or recreation  of the SA drain set-up used on Mr. Meck," and asserts "[t]he Clinical Risk Manager for the Quality & Patient Safety Institute took the photographs exclusively for use during a peer review committee meeting." (Doc. No. 28-2.) The Log also identifies two SERS reports dated February 8, 2013 and March 12, 2013, which CCF states were "created for Clinical Risk Management exclusively for use by the peer review committee." (*Id.*)

In her Affidavit, Ms. DiFranco avers (in relevant part) as follows:

2. The Cleveland Clinic Foundation has an internal quality assurance/peer review committee process that conducts quality review activities involving the competence of, professional conduct of, and quality of care provided by its health care providers.

3. I am familiar with and knowledgeable about the procedures of the quality assurance/peer review committee process, as well as the type of information and documentation that is created by or for use of the committee, and how that information is used.

4. An investigation into, or review of, the care provided to John Meck at The Cleveland Clinic was conducted by the hospital's peer review/quality assurance committee.

5. I have reviewed the attached 'privilege log,' as well as the documents described therein, and can confirm that the withheld photographs listed in the log are accurately described and were created solely for the use of the hospital's peer review/quality assurance committee. These photographs were not used for any other purpose, nor were they

---

[2] Although Defendant raised work product as a basis for withholding the SERS reports in its Response to Plaintiff's Document Request No. 3, Defendant does not assert these reports are covered by the work product doctrine in its Brief in Opposition to Plaintiff's Motion to Compel. In response to an inquiry from the Court, Defendant indicated it was withdrawing any claim of attorney work-product privilege related to the SERS reports.

6

> 6. disclosed outside the peer review/quality assurance committee process, with one exception the documents were disclosed to retained legal counsel for this pending matter to determine discoverability in the current litigation.
>
> 6. I can also confirm that the other withheld documents listed in the log are accurately described, were created solely for the use of the hospital's peer review/quality assurance committee, and are incident reports, as that term is defined by Ohio Revised Code § 2305.25(D). These reports were not used for any other purpose, nor were they disclosed outside the peer review/quality assurance committee process, with one exception the documents were disclosed to retained legal counsel for this pending matter to determine discoverability in the current litigation.

(Doc. No. 28-1.)

In her Reply, Plaintiff withdraws her request for the photographs at issue in light of Ms. DeFranco's affidavit, but argues "the 'mock- or recreation- of the subarachnoid drain set-up used on Mr. Meck' was not created for or submitted to the peer review committee otherwise the photographs that were submitted would have been unnecessary." (Doc. No. 30 at 2.) Plaintiff therefore requests the Court "compel access to the mockup of the device." (*Id*.) If the mockup no longer exists, Plaintiff asserts Defendant should be compelled to produce the photographs for "failing to preserve the evidence." (*Id*. at 3.)

With respect to the SERS reports, Plaintiff emphasizes Defendant initially objected to production of the SERS reports on the grounds they were both peer review records and attorney work product. She argues Defendant's assertion of work product privilege necessarily implies the SERS reports were not created solely for use of the peer review committee, which would negate the applicability of the peer review privilege under § 2305.252. Plaintiff argues "there must have been a factual basis for asserting the work product doctrine" and Defendant "cannot hide behind a self-serving affidavit [i.e., Ms. DiFranco's Affidavit] that directly contradicts its

7

earlier factual position." (*Id*. at 4.)

In response to an inquiry from the Court, Defendant indicated it was withdrawing any claim of attorney work-product privilege related to the SERS reports. Additionally, on May 16, 2017, Defendant submitted the Affidavit of Clinical Risk Manager Diana Marsilio, R.N., B.S.N., in which Ms. Marsilio avers the mock-up of the SA drain, and the photographs of that mock-up, were created solely for the use of CCF's peer review committee. (Doc. No. 39-1.)

**A.  Legal Standard**

In cases of diversity jurisdiction, privileges are determined in accordance with state law. *See Cleveland Clinic Health System-East Region v. Innovative Placements, Inc.*, 283 F.R.D. 362, 365 (N.D. Ohio 2012); *Grupo Condumex, S.A. de C.V. v. SPX Corp*., 331 F.Supp.2d 623, 629 n. 3 (N.D. Ohio 2004); Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Privileges are to be strictly construed, and the party claiming the privilege has the burden of proving that the privilege applies to the requested information. *Ward v. Summa Health Sys*., 184 Ohio App.3d 254, 261, 920 N.E.2d 421, 426 (Ohio App. 9th Dist.2009).

Ohio Revised Code § 2305.252 provides the following:

(A) Proceedings and records within the scope of a peer review committee[3] of a
health care entity shall be held in confidence and shall not be subject to discovery

---

[3] The term "peer review committee" is defined as follows: "(E)(1) "Peer review committee" means a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following: (a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care; (b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions."  Ohio Rev. Code § 2305.25(E)(1).

8

> or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee. * * *
>
> Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.

Ohio Rev. Code § 2305.252 (footnotes added). At a bare minimum, the party claiming the privilege must bring to the court's attention the existence of a peer review committee and show the committee investigated the case in question. *See Cleveland Clinic Health System  East Region,* 283 F.R.D. at 365; *Bailey v. Manor Care of Mayfield Hts.,* 4 N.E.3d 1071, 1078 (Ohio App. 8th Dist. 2013); *Manley v. Heather Hill, Inc.*, 175 Ohio App.3d 155, 160, 885 N.E.2d 971, 974 (Ohio App. 11th Dist.2007). The party must establish: (1) the existence of a committee that meets the definition of a "peer review committee;" and (2) that each of the documents over which it asserts the privilege is a "record within the scope of a peer review committee." *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 530, 968 N.E.2d 41, 46 (2011). *See also Bailey*, 4 N.E.3d at 1079. The party also must provide evidence as to the specific documents requested over which it asserts the privilege. *Id.*

Ohio courts have held that "[t]he peer-review privilege is not a generalized cloak of secrecy over the entire peer-review process." *Giusti v. Akron Gen. Med. Ctr.*, 178 Ohio App.3d 53, 896 N.E.2d 769, ¶ 14 (Ohio App. 9th Dist. 2008). As one Ohio court noted, "[i]If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee."

9

*Huntsman v. Aultman Hosp.*, 2008 WL 2572598, ¶ 47 (Ohio App. 5th District May 27, 2008). Thus, "documents that may be provided to [a] peer review committee, but were not originally prepared exclusively for the committee are not protected by the privilege; the privilege attaches only to the files for the committee, not to all files in a facility." *Bailey*, 4 N.E.3d at 1079. *See also Bansal v. Mount Carmel Health Systems, Inc.*, 2009 WL 5062122, ¶ 17 (Ohio App. 10th Dist. Dec. 24, 2009); *Selby v. Fort Hamilton Hosp.*, 2008 WL 2102412 (Ohio App. 12th Dist. May 19, 2008) .

### B. Photographs of and/or Access to the SA drain Mock-Up

As noted above, Plaintiff withdrew her request for the photographs at issue in light of Ms. DeFranco's affidavit, but argues "the 'mock- or recreation- of the subarachnoid drain set-up used on Mr. Meck' was not created for or submitted to the peer review committee otherwise the photographs that were submitted would have been unnecessary." (Doc. No. 30 at 2.) Plaintiff requests the Court "compel access to the mockup of the device." (*Id*.) If the mockup no longer exists, Plaintiff asserts Defendant should be required to produce the photographs for "failing to preserve the evidence." (*Id*. at 3.)

Plaintiff's request is denied. As noted above, on May 16, 2017, Defendant submitted the affidavit of Diana Marsilio, R.N., B.S.N. (Doc. No. 39-1.) Therein, Ms. Marsilio avers as follows:

1. I am the Clinical Risk Manager for The Cleveland Clinic Foundation, and I have personal knowledge of the information set forth in the Affidavit.

2. I have performed an investigation and can confirm that the mock or recreation- of the SA drain set-up that is depicted in the withheld photographs was created by Clinical Risk Management during its investigation in connection with Mr. Meck and the administration of albumin. The mock SA drain set-up was created solely for the purpose of

10

> being photographed, and the photographs were used exclusively by the peer review committee. The mock SA drain set-up was not used for any other purpose, nor was it distributed outside the peer review/quality assurance committee process.
>
> 3. I can also confirm that the mock SA drain set-up was dismantled sometime after the photographs were taken and no longer exist.

(Doc. No. 39-1.)

In light of Ms. Marsilio's affidavit, the Court denies Plaintiffs' request for access to the mock-up as moot and, further, denies her request for production of the photographs of the mock-up. Defendant has carried its burden of establishing that both the mock-up itself and the photographs at issue were created solely for purposes of CCF's peer review committee. Accordingly, the Court finds the photographs are protected by the peer review privilege and non-discoverable.

### C. SERS Reports

With regard to the two SERS reports at issue (dated February 8, 2013 and March 12, 2013), Plaintiff argues Defendant's assertion of work product privilege necessarily implies that the SERS reports were not created solely for use of the peer review committee, which would negate the applicability of the peer review privilege under Ohio Rev. Code § 2305.252. Plaintiff argues "there must have been a factual basis for asserting the work product doctrine" and Defendant "cannot hide behind" Ms. DiFranco's Affidavit because it "directly contradicts its earlier factual position." (*Id*. at 4.)

The Court is not persuaded by Plaintiff's argument. As an initial matter, while Defendant did initially assert work product privilege in response to Plaintiff's Document Request No. 3, Defendant has since indicated it is withdrawing any claim of work-product protection related to

the SERS reports at issue and is instead relying solely on Ohio's peer review privilege. Moreover, even if the Court were to hold Defendant to its initial assertion of both privileges, Plaintiff has not identified any case law that has examined this specific issue and found that the assertion of work product privilege in this context is "mutually inconsistent with" or otherwise negates Ohio's peer review privilege as a matter of law. To the contrary, at least one court has determined that SERS reports such as the ones at issue herein were protected by both the work product and peer review privileges. *See Cleveland Clinic Health System- East Region, et al., v. Innovative Placements, Inc., et al.*, 263 F.R.D. 362 (N.D. Ohio 2012).

Further, counsel for CCF, Ms. DiFranco, has averred that the February 8, 2013 and March 12, 2013 SERS reports constitute incident reports that were created solely for the use of the peer review committee and were not used for any other purpose. (Doc. No. 25-1.) The Court has conducted a careful *in camera* review of the SERS reports at issue and found nothing that would indicate otherwise.

Accordingly, the Court finds the February 8, 2013 and March 12, 2013 SERS reports are protected from disclosure by Ohio's peer review privilege. Plaintiff's Motion to Compel these reports is, therefore, denied, and Defendant's Motion for Protective Order is granted.

**III.    Conclusion**

For the reasons set forth above, Plaintiff's Motion to Compel (Doc. No. 25) is DENIED and Defendant's Motion for Protective Order (Doc. No. 28) is GRANTED.

**IT IS SO ORDERED.**


Date: May 17, 2017                                     s/ *Jonathan D. Greenberg*
                                                                         Jonathan D. Greenberg
                                                                         U.S. Magistrate Judge